UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.  4:21CR00423 RWS |
| ROTIMI OLADIMEJI, | ) ) ) ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant, ROTIMI OLADIMEJI, represented by defense counsel, John C. Schleiffarth, Esq., and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1, 2, 3, 6, and 9 of the indictment, and the United States agrees that it will move for the dismissal of Counts 4, 5, 7, 8, and 10 as to the defendant at the time of sentencing. The Government also agrees that no further federal prosecution will be brought in this District relative to the defendant's participation in an international romance scam conspiracy between May 4, 2019, and March 18, 2020, of which the Government is aware at this

time. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a) as long as notice of any such request be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

**3.   ELEMENTS:**

As to Count 1, the defendant admits to knowingly violating Title 18, United States Code, Section 1349, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

One, two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit mail fraud, using an assumed name and address to commit a mail fraud scheme, wire fraud scheme, and a scheme to use assumed names to commit a mail fraud scheme, as charged in the indictment, and,

*Two*, the defendant voluntarily and intentionally joined in the agreement when it was first reached or while it was still in effect; and,

*Three*, at the time the defendant joined in agreement, he knew the purpose of the agreement.

As to Counts 2 and 3, the defendant admits to knowingly violating Title 18, United States Code, Section 1341, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One,* the defendant voluntarily and intentionally participated in a scheme to obtain money or property by means of material false representations or promises in that the defendant caused the mailing of express mail packages containing the illegal proceeds of a Romance Scam;

*Two,* the defendant did so with the intent to defraud; and

*Three,* the defendant caused to be used the mail in furtherance of, or in an attempt to carry out, some essential step in the scheme.

As to Counts 6 and 9, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One,* that the defendant knowingly participated in the scheme to defraud or to obtain money or property by means of false pretenses, representations or promises;

*Two,* that the defendant acted with the intent to defraud; and

*Three,* that for the purpose of carrying out the scheme or attempting to do so, the defendant caused foreign wire communications to take place.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

3

On February 3, 2021, Oladimeji traveled to the United States from Lagos, Nigeria. Upon his arrival in Atlanta, Georgia, the United States Department of Homeland Security Investigations conducted an inbound border search of Oladimeji and discovered two cellular phones that he affirmed belonged to him. The phones were detained, and searched. The search of one of the phones revealed text message communications between people listed as R. SS and G.J. R. SS was later determined to be R.W.

A subsequent investigation revealed that sometime in May 2019, an individual residing in Nigeria established a profile on LinkedIn, an internet networking site for professionals, in the name of G.J., but utilizing the photograph of K.H., a German national. According to the fraudulently created profile, G.J. was a Belgian national who was a veterinarian and animal behaviorist living in the Greater St. Louis area.

In August 2019, R.W., a resident of the Eastern District of Missouri, created a dating profile on an internet dating service. Approximately two months later, Oladimeji, a resident of Texas, and individuals unknown to the United States, began using the identity of G.J. to communicate with R.W. R.W. was convinced by the fraudulent linked in profile that G.J. was an animal behaviorist living near R.W. R.W. and the false G.J. made several plans to meet in person that were never realized. On one occasion, R.W. was left waiting at the Missouri Botanical Gardens for G.J. to arrive.

Shortly after initiating communication with R.W., Oladimeji advised R.W. that G.J. was leaving on a business trip to Dubai in the United Arab Emirates. A day after G.J.'s alleged arrival in Dubai, Oladimeji sent a text asking that R.W. help G.J. with an urgent business issue. Oladimeji texted R.W. wire transfer information so that R.W. could wire funds from her financial account in

4

the Eastern District of Missouri to a financial institution in the United Arab Emirates for the benefit of G.J. Believing that G.J. needed the funds for his business venture, on October 23, 2019, R.W. sent $15,000 from her Bank of America account to G.S.B. in care of the National Bank of Fujairah Iban in Dubai on October 23, 2019.

Between October 2019 and March 2020, R.W. received multiple text messages to R.W. requesting that she electronically transfer additional sums to financial institutions in Dubai. In total, R.W. sent, and attempted to send, more than $931,000 through interstate and foreign wire transfers from the Eastern District of Missouri to financial institutions in Texas and Dubai. In addition to the initial $15,000 wire transfer, on December 30, 2019, R.W. followed the instructions texted to her, and wired $150,000 from her Bank of America account to C.D. in care of Noor Bank PJSC in Dubai on December 30, 2019. Oladimeji agrees and admits that he participated in a fraudulent scheme wherein he and others induced R.W. to transfer the money through interstate and foreign wires through the impersonation of G.J. Oladimeji further agrees and admits that he, and other participants in the fraud scheme, falsely claimed that unless G.J. received the requested financial assistance G.J. would not be permitted to leave Dubai.

Oladimeji further agrees and admits that, in his guise of G.J., he informed R.W. that she needed to send through Federal Express, a private and commercial interstate carrier, additional money to the assumed and fictitious name of H.E. at an address in the State of Texas. Believing that G.J. needed her financial assistance in order to return to her in the Eastern District of Missouri, R.W. sent cash and cashier's checks to H.E. at the Texas residence of Olumide Akinrinmade ("Akinrinmade"). Specifically, on the below listed dates, Oladimeji texted R.W. to send FedEx

5

packages with cashier's checks and cash from the Eastern District of Missouri to H.E. at 540 Buckingham Road, Richardson, Texas:

| DATE | FEDEX TRACKING NUMBER | FEDEX PACKAGE CONTENTS |
|---|---|---|
| November 1, 2019 | 780676205601 | $54,000 Bank of America Cashier's Check made payable to T.G. |
| November 8, 2019 | 780845200319 | • $30,000 Commerce Bank<br><br>• Cashier's Check made payable to F.J.<br><br>• $80,000 Bank of America Cashier's Check made payable to Blue Springs Corporation<br><br>• $60,000 Commerce Bank Cashier's Check made payable to T.G.<br><br>• $5,000 Cash |

Oladimeji agrees and admits that he recruited Akinrinmade and another resident of Texas, Adewale Adesanya, "Adesanya," to assist him in obtaining the proceeds that R.W. sent to Akinrinmade's Richardson, Texas residence, and in cashing the cashier's checks that were made payable to individuals other than himself and G.J. In exchange for their assistance, Oladimeji agrees and admits that he paid them a percentage of the funds that they handled for him.

In addition to receiving R.W.'s packages in the name of H.E., Akinrinmade deposited cashier's checks that had been made payable to F.J. into a J.P. Morgan Chase Bank account Akinrinmade had fraudulently opened using the identity of F.J. and a counterfeit Nigerian passport bearing the name F.J. and Akinrinmade's photograph. The deposits made by Akinrimade included a $30,000 cashier's check made payable to F.J. by R.W. that was credited to F.J.'s account on November 13, 2019. Oladimeji agrees and admits that R.W. sent the check through Federal Express to H.E. in Richardson, Texas on November 8, 2019, based upon instructions he gave in the guise

6

of G.J. Oladimeji further agrees that after the $30,000 check cleared, Akinrinmade provided the majority of the funds to Oladimeji so that Oladimeji could distribute the funds to individuals residing in Nigeria and the United States.

Oladimeji further agrees and admits that the Federal Express package sent to Akinrinmade on November 8, 2019, also contained $5,000 in cash, an $80,000 cashier's check R.W. made payable to Blue Springs Corp., and a $60,000 cashier's check made payable to F.J. by R.W. Oladimeji further agrees and admits that he distributed the two additional cashier's checks to Adesanya, and that Adesanya deposited the checks into a J.P. Morgan Bank account he had fraudulently opened in the name of F.J. and a J.P. Morgan Bank account he had fraudulently opened after fraudulently registering Blue Springs Corporation as a business with the Texas Secretary of State. In opening both accounts, Adesanya used a counterfeit passport in the name of T.G. he had received from an individual living in Nigeria. Oladimeji further agrees and admits that he paid Adesanya a portion of the fraudulently obtained funds that were deposited into Adesanya's fraudulently opened bank accounts. Oladimeji further agrees and admits that the Federal Express packages R.W. sent to H.E. in Richardson, Texas contained approximately $314,000 in cash and cashier's checks.

Oladimeji agrees and admits that he paid Akinrinmade and Adesanya a portion of the funds sent by R.W. pursuant to his fraudulent representations. Oladimeji further agrees and admits that he also received a percentage of the funds that resulted from his deception of R.W., but that the majority of the funds were distributed to individuals residing in Nigeria and the United States.

Oladimeji agrees and admits that he participated in a romance fraud scheme involving individuals residing in the United States and Nigeria that involved fraudulent interstate and foreign

7

wire transfers of money and Federal Express deliveries between October 23, 2019, and March 18, 2020. Oladimeji further agrees and admits that the romance fraud conspiracy caused, and attempted to cause, more than $1,200,000 in losses from R.W.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime of conspiracy to commit mail fraud, the scheme of using an assumed name and address, and wire fraud to which the defendant is pleading guilty in Count 1 is imprisonment of not more than 20 years, a fine of not more than $250,000.00, or both. The Court may also impose a period of supervised release of not more than 3 years.

Further, the defendant fully understands that the maximum possible penalty provided by law for the crime of mail fraud to which the defendant is pleading guilty in Counts 2 and 3 is imprisonment of not more than 20 years, a fine of not more than $250,000.00, or both. The Court may also impose a period of supervised release of not more than 3 years.

In addition, Defendant fully understands that the maximum possible penalty provided by law for wire fraud to which the defendant is pleading guilty in Counts 6 and 9 is imprisonment of not more than 20 years, a fine of not more than $250,000.00, or both. The Court may also impose not more than a 3-year period of supervised release.

## 6. U.S. SENTENCING GUIDELINES 2021 MANUAL:

The defendant understands that Counts 1, 2, 3, 6, and 9 are affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a.   Chapter 2 Offense Conduct:**

**(1)   Base Offense Level:**   The parties agree that the base offense level is *7* as found in Section 2B1.1(a)(1).

**(2)   Chapter 2 Specific Offense Characteristics**:   The parties submit that the following specific offense characteristics apply: *14 levels* should be added pursuant to Section 2B1.1(b)(1)(H) because the loss resulting from the offense was more than $550,000.00; *2 levels* should be added pursuant to Section 2B1.1(b)(2)(A)(iii) because the offense involved substantial financial hardship to one or more victims; *2 levels* should be added pursuant to Sections 2B1.1(b)(10)(B) and (C) because a substantial part of a fraudulent scheme was committed from outside the United States and the offense otherwise involved sophisticated means; and *2 levels* should be added pursuant to Section 2B1.1(b)(11)(B)(i) because the offense involved the production of any unauthorized or counterfeit access device.

**b.   Chapter 3 Adjustments:**

**Acceptance of Responsibility**:   The parties recommend that *3 levels* should be deducted pursuant to Sections 3E1.1(a) and (b) because the defendant has clearly demonstrated acceptance of responsibility and provided timely notification of an intent to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c.   Estimated Total Offense Level:**   The parties estimate that the total offense level is *24*.

**d.   Criminal History:**   The determination of the defendant's Criminal History Category shall be left to the Court.   Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.   The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e.   Effect of Parties' U.S. Sentencing Guidelines Analysis:**   The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.   The parties may not have foreseen all applicable Guidelines.   The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.   WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a.   Appeal:**   The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)   Non-Sentencing Issues:**   The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to motions, discovery and the guilty plea.

**(2)   Sentencing Issues:**   In the event the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or below the corresponding range, then, as a part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History.   Similarly, the Government hereby waives

all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, and after determining the appropriate Total Offense Level, sentences the defendant within or above the corresponding range.

  **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

  **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

  **a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

  **b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

  **c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime

defendant committed. As a special condition of supervised release, defendant agrees not to initiate any contact, direct or indirect, with victims of the offense or identified government witnesses. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d.   Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100.00 for each count, for a total of $500.00, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.   Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.   Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. The precise amount of restitution is unknown at the present time. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b)

and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g.   Forfeiture:**   The defendant agrees to forfeit all of the defendant's interest in all items seized by law-enforcement officials during the course of their investigation including, but not limited to: currency or any personal property. The defendant admits that all United States currency, property and assets seized by law enforcement officials during their investigation constitute the proceeds of the defendant's illegal activity, were commingled with illegal proceeds or were used to facilitate the illegal activity. The defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the government and to rebut the claims of nominees and/or alleged third party owners. The defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.   ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**   In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10.   VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

11/30/2022
Date

TRACY L. BERRY 014753 TN
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102
(314) 539-2200

11-29-22
Date

ROTIMI OLADIMEJI
Defendant

11-29-22
Date

JOHN SCHLEIFFARTH
Attorney for Defendant

16